IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEBRA L. GREEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:15-CV-1868-N |
| | § | |
| COSTCO WHOLESALE CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**ORDER**

This Order addresses Defendant Costco Wholesale Corporation's ("Costco") motion for summary judgment [14], Plaintiff Debra L. Green's motion for leave to supplement Plaintiff's response [25], and Costco's motion to strike Plaintiff's first supplement [26]. The Court grants the motion for summary judgment, grants the motion for leave to supplement, and denies the motion to strike.

**I. THE ORIGINS OF THE DISPUTE**

This case arises out of Green's employment with Costco, which began in July 2007 and lasted until September 2014. Green began working at Costco's Southlake warehouse, where she received training on Costco policies, including Costco's Anti-Harassment Policy. *See* App. in Supp. of Mot. for Summ. J. ("Def.'s App."), Ex. B-39 [16]; Def.'s App., Ex. B-40. Green became a Front End Supervisor for Costco in July 2009. *See id.* at Ex. G ¶ 2. At this time, she signed Costco's Statement of Confidentiality, noting her heightened obligation to refrain from discussing private matters of members and other employees. *See id.* at Ex.

ORDER – PAGE 1

B-41. Green became a Membership Supervisor on September 7, 2009, at which time she again acknowledged her obligation to honor the privacy of members and employees and to refrain from gossip. *See id*. at Ex. G ¶ 2. In 2010, a Costco member complained to the Southlake Warehouse Manager that Green improperly accessed the member's private information in Costco's database for Green's personal use. *See id*. at Ex. G-2 266. After conducting an investigation, Costco demoted Green from her position of Membership Supervisor. *See id*. at Ex. G-3. Green filed an ultimately unsuccessful lawsuit against Costco alleging age and sex discrimination and retaliation related to her demotion. *See id*. at Ex. A-1, A-2, A-3.

Green took a leave of absence from October 2010 until March 2011, during which time Costco transferred Green, per her request, to a Costco warehouse in Lewisville. *See id*. at Ex.G ¶ 8. Lewisville General Manager Dan Bridge selected Green for a promotion to Front End Supervisor. *See id*. at Ex. B ¶ 5. Green rotated back into her Membership Supervisor role in March 2013. *See id.* ¶ 6.

Bridge moved to Costco's new Fort Worth warehouse, which opened in May 2014. *See id.* ¶ 7. Green applied to transfer to the new Fort Worth location, requesting the positions of: 1) Membership/Marketing Manager; 2) Assistant Front End Manager; or 3) Membership Supervisor. *See id*. at Ex. B-3. Bridge interviewed Green in February 2014, and he explained to her that he was not considering her for the Membership Manager position. *See id*. at Ex. B ¶ 9. Bridge additionally explained to Green that she needed to work on her people skills with other employees. *See id*. Green noted that she hoped to improve on

getting along well with others. *See id*. Bridge initially offered Green the position of Front End Supervisor, but ultimately offered her a Membership Supervisor position, which Green accepted. *See id*. ¶¶ 10–11. Costco chose Tyler Masid to become Membership Manager at the new Forth Worth warehouse. *See id*. ¶ 11.

A number of employees, including Green's direct reports, made numerous complaints about Green, including that she complained and made negative comments about Masid, that she yelled at her employees, that she gossiped about hourly employees with other hourly employees, and that she bullied and harassed Costco employees. *See* Def.'s Mot. for Summ. J. 10–13 [14] ("MSJ"). In September 2014, Marketer John Perez and Optical Department employee Claudia Gomez complained to Bridge that Green had spread a rumor that they were engaging in an extra-marital affair. *See* Def.'s App., Ex. B ¶ 27. Bridge investigated the report, and a number of employees confirmed that Green had in fact spread this rumor and had engaged in other forms of inappropriate behavior related to discussion of employees' private information. *See* MSJ 13–14. On September 9, 2014, Bridge advised Green that they were suspending her pending further investigation. *See* Def.'s App., Ex. B ¶ 37. During this meeting, Green told Bridge that she has attention deficit hyperactive disorder ("ADHD"). *See id*. ¶ 38. Bridge prepared an Employee Termination Request, recommending Green's termination for violation of the Managers Standard of Ethics because of her malicious gossiping. *See id*. at Ex. B-33. Kim Brown, Vice President for Costco's Texas Region, ultimately decided to terminate Green. *See id*. at Ex. E ¶4. Richard Webb, Vice President

and General Manager for Texas and Louisiana, and Dennis Zook, Executive Vice President, approved the termination. *See id.*

Green filed her Original Petition against Costco in the 191st District Court of Dallas County, Texas. Costco removed the case to this Court, and now moves for summary judgment.

## II. THE COURT GRANTS COSTCO'S MOTION FOR SUMMARY JUDGMENT[1]

### A. The Summary Judgment Standard

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment

---

[1]Green filed a motion for leave to supplement her response to the motion for summary judgment [25]. Costco filed a motion to strike Green's supplement [26]. The Court grants the motion for leave to supplement and denies the motion to strike.

either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.  Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).  Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).  Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### B. The Court Grants Summary Judgment on Green's Claims Under Chapter 21 of the Texas Labor Code

***1. Failure to Promote Claims.*** – In her Original Petition, Green complains that she "applied for a promotion to Membership Manager, but the promotion was given to Tyler Massid [sic], a twenty-eight (28) year old male with no experience."  Pl.'s Original Pet. ¶ 5.04 [1-6].  Green alleges that Costco violated Texas Labor Code § 21.001, *et seq.*, "by discharging Plaintiff and/or discriminating against her in connection with compensation, terms, conditions or privileges of employment because of Plaintiff's sex."  *Id.* ¶ 6.04.  Green additionally states that she is "a female with a disability, ADHD and depression," which

required her to "take medication and to take limited time off to consult her doctors for therapy." *See id*. ¶ 8.03. Green claims that Costco "has intentionally discriminated and retaliated against Plaintiff because of her disability, by exhibiting bias towards Plaintiff and treating Plaintiff in a discriminatory manner compared with her peers." *See id*. ¶ 8.07.

To the extent Green claims that Costco engaged in sex discrimination and disability discrimination in violation of Chapter 21 of the Texas Labor Code by failing to promote her, such claims are barred by the mandatory 180-day time limit under section 21.202. *See* TEX. LAB. CODE § 21.202(a)–(b). In her Charge of Discrimination filed with the Texas Workforce Commission on September 16, 2014 (the "Charge"), Green claims that Costco denied her a promotion on March 13, 2014. *See* Def.'s App., Ex. I 361. Green also testified that she learned that she had not been selected for her desired position "in February, maybe, of 2014." *Id*. at Ex. H 281. The 180-day limitations period begins to run when an employee is informed of the allegedly discriminatory employment decision. *See Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 493 (Tex. 1996). Thus, even assuming that Green learned of the employment decision on March 13, 2014, Green had until September 9, 2014, to file a complaint of discrimination with the Texas Workforce Commission. Green filed her Charge on September 16, 2014. The 180-day time limit is "mandatory and jurisdictional." *See id*. at 492. Though Green has the burden to establish that she in fact complied with the 180-day deadline, she has not done so. Accordingly, the Court grants summary judgment to Costco on Green's failure to promote claims under Chapter 21.

***2. Retaliation Claims.*** – Green alleges in her Original Petition that Costco retaliated against her for "complaining to Defendant's manager about discrimination based upon her disability." Pl.'s Original Pet. ¶ 9.02. Additionally, Green alleges that on March 13, 2014, she "filed a complaint regarding [her] non-promotion with Defendant's Human Resources Department." *Id.* ¶ 5.06. In her response to Defendant's motion for summary judgment, Green explains that Costco retaliated against her for sending a text message to her supervisor, Masid, on September 3, 2014, in which she complained that she should not be blamed for trying to end the affair between Perez and Gomez. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. ¶ 5.25 [19] ("Pl.'s Resp."). However, in her Charge, Green claims that Costco retaliated against her because she filed a discrimination lawsuit in violation of Section 704(a) of Title VII.

"The scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."[2] *Thomas v. Tex. Dep't of Criminal Justice*, 220 F.3d 389, 395 (5th Cir. 2000). Accordingly, the scope of Green's complaint is limited to claims "that are 'like or related to' the claims listed in the charge." *White v. Averitt Express, Inc.*, 2011 WL 3652502, at *2 (N.D. Tex. 2011) (quoting *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995)). Green's retaliation claim is not like or

---

[2]A purpose of Chapter 21 is to execute the policies embodied in Title VII of the Civil Rights Act of 1963, the Age Discrimination in Employment Act ("ADEA"), and the Americans with Disabilities Act of 1990 ("ADA"). *See Allen v. Solo Cup Co.*, 2006 WL 1949455, at *4 (N.D. Tex. 2006); *see also* TEX. LAB. CODE ANN. §§ 21.001, 21.002, 21.003, 21.006. The Court thus uses a federal evidentiary framework to interpret Chapter 21. *See Allen*, *supra*.

related to the claims in her Charge. In her Charge, Green claims that Costco discriminated against her because of her sex, age, and disability. Green additionally claims that Costco retaliated against her because she filed a discrimination lawsuit. However, nothing in Green's discrimination charges would lead an EEOC investigator to believe that Green intended to assert retaliation claims in addition to these claims. *See id.* at *3. An investigation of retaliation based a discrimination lawsuit filed in 2011 and disposed of in 2012 is unrelated to an investigation of a claim for retaliation based on Green's text message complaint to her supervisor in 2014, or any other alleged internal complaint in this time frame. Thus, Green failed to exhaust her administrative remedies on her retaliation claims under Chapter 21, and the Court accordingly grants summary judgment on these claims.

   ***3. Hostile Work Environment Claims.*** – In Counts 4, 5, and 6 of her Original Petition, Green claims that Costco subjected her to retaliation, harassment, and a hostile environment under the Texas Labor Code. Green states that as a result of her complaints to her manager, Masid, about discrimination based upon her disability, she "was harassed . . . and subjected to a hostile environment." Pl.'s Original Pet. ¶ 9.02. However, Green says nothing about Costco subjecting her to a hostile work environment in her Charge. Green's hostile work environment claims "could not be expected to grow out of her EEOC discrimination charge when she charged only her employer's discrete acts in terminating and failing to promote her, and made no mention of a hostile work environment . . . ." *Gates v. Lyondell Petrochemical Co.*, 227 Fed.Appx. 409, 409 (5th Cir. 2007). Accordingly, Green failed to exhaust her

administrative remedies on her hostile work environment claims, and the Court accordingly grants summary judgment on these claims.

***4. Disability Discrimination Claims.*** – Green alleges that she has a disability, ADHD and depression, which required her to take medication and take time off from work to consult her doctors for therapy. *See* Pl.'s Original Pet. ¶ 8.03. Green claims that Costco "intentionally discriminated and retaliated against Plaintiff because of her disability, by exhibiting bias toward Plaintiff and treating Plaintiff in a discriminatory manner compared with her peers." *Id.* ¶ 8.07. To state a prima facie case of disability discrimination under the ADA, a plaintiff must show: "(1) that [s]he has a disability; (2) that [s]he was qualified for the job; [and] (3) that [s]he was subject to an adverse employment decision on account of [her] disability." *Moss v. Harris County Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017) (quoting *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014)). Even if Green can establish the first element of a prima facie case of disability discrimination, which Costco disputes, summary judgment is proper on Green's disability discrimination claim because she cannot show that Costco discharged her because of her disability.

First, Green fails to show that any nondisabled employee committed the *same offenses* and was not discharged. *See Edwards*, 2015 WL 5227817, at *4 (granting summary judgment on a plaintiff's age discrimination claim where plaintiff failed to establish that any younger employee committed the same offense and was not discharged); *see also Jackson v. Watkins*, 619 F.3d 463, 468 (5th Cir. 2010) ("But it is not our place to second-guess the

business decision of an employer, as long as those decisions are not the result of discrimination."). Thus, Green has not stated a prima facie case of disability discrimination.

Even if Green could make a prima facie case, however, Costco offers a legitimate, nondiscriminatory reason for firing Green. Costco states that it terminated Green's employment because she violated the Managers Standard of Ethics by engaging in prohibited conduct, including "spreading malicious gossip about Perez and Gomez's alleged affair and discussing her direct reports' performance with other employees." MSJ 27. Further, Costco notes that Green "previously had been demoted and spared termination for misusing a member's confidential information." *Id*. Though she initially declined the allegations, Green admits that she "made no secret of her feelings" on the subject of the affair between Perez and Gomez. Pl.'s Resp. ¶ 5.05. Costco produced evidence of Green's improper gossiping about the affair.[3] Costco also includes statements from a number of Costco employees complaining of Green's improper conduct.[4] Costco's policies explicitly prohibit gossiping about co-workers' sexual conduct, and "discussing the private matters of members and other employees." *See* Def.'s App., Ex. B-39, B-40, B-41. Green acknowledged this by signing Costco's confidentiality statements and anti-harassment policies. *See id*. Because Costco

---

[3]*See, e.g.*, Def.'s App., Ex. D-1 at 230 ("she cheated on ernie...again" "with PEREZ"); Def.'s App., Ex. B-5 (Green "said John [Perez] was complaining about her because John and Claudia [Gomez] were sleeping together and afraid Claudia's husband would find out.").

[4]These complaints include statements such as that Green "was 'intimidating her employees,'" "'constantly gossip[ed] about or share[d] information about hourly employees with other hourly employees,'" was "'singling people out, gossiping, bullying, and harassing'" other employees, and made her reports feel unsafe. MSJ 11–13.

ORDER – PAGE 10

has demonstrated a legitimate, nondiscriminatory reason for terminating Green, the burden is on Green to show that Costco's reason for terminating her is mere pretext. Green cannot meet this burden.

Green claims that the affair between Perez and Gomez violated Costco policies, and that Costco fired her "just for following Costco rules and attempting to stop the policy violations," while Perez went unpunished. Pl.'s Resp. ¶ 5.13. Green claims that Perez and Gomez violated Costco's 2013 Employee Agreement's ("EA") sexual harassment policies, that they contributed to immoral conditions in violation of the EA, and that they created the appearance of favoritism in violation of the EA. Green claims that she was simply adhering to her own duty under section 11.7 of the EA, which requires managers to "adhere to a set of moral principles" in carrying out duties. *See* Def.'s App., Ex. B-37 at 193. Green claims she was doing just that by trying to stop the adulterous behavior of Perez and Gomez. However, Green's reasoning does not address the fact that *her* actions violated Costco policies – Costco has shown that Green gossiped about her co-workers' sexual conduct, gossiped about her direct reports' work performance, and misused the private information of a Costco member. Additionally, nothing in Costco's policies required Green to gossip with other employees about Perez and Gomez's affair. Other than her own subjective opinion, Green fails to include any concrete evidence showing that Costco acted with discriminatory intent. *See, e.g., Douglass*, 79 F.3d at 1430 ("It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the

face of proof showing an adequate nondiscriminatory reason."). Green cannot show pretext, and as such, summary judgment is appropriate on Green's disability discrimination claims.

*5. Sex Discrimination Claims.* – Green, a female, additionally alleges that Costco, through its agent Gary Silvestri, "engaged in a single continuous course of conduct of discrimination against Plaintiff because of sex in order to destroy Plaintiff, her career, and her personal life." Pl.'s Original Pet. ¶ 6.05. To state a prima facie case of sex discrimination, a plaintiff must show that: "(1) she is a member of a protected class; (2) she was qualified for the position she sought; (3) she suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably." *Hobbs v. Ketera Technologies, Inc.*, 865 F. Supp. 2d 719, 727 (N.D. Tex. 2012) (citing *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007)). However, Green cannot show that "the circumstances are such that an unlawful discriminatory reason for the adverse employment action can be inferred." *Puleo v. Texana MHMR Center*, 187 F. Supp. 3d, 769, 781 (S.D. Tex. 2016). Green fails to show that any male employee committed the same offenses and was not discharged. Though Green alleges that Costco did not discharge Perez despite his alleged violation of Costco policies, Green does not show that he committed similar violations to hers, the same quantity of violations, or that his position in the company was subject to the same standards as Green's position. Because of this, Green fails to state a prima facie case of sex discrimination. Further, as discussed in Section II.B.4, *supra*, Costco offers a legitimate non-discriminatory reason for terminating Green. Green violated the Managers Standard of Ethics by engaging in prohibited conduct, such as malicious gossip

and the misuse of member information. Other than her subjective belief, Green does not provide concrete evidence showing that Costco acted with discriminatory intent. Accordingly, summary judgment is appropriate on Green's sex discrimination claims.

### C. The Court Grants Summary Judgment on Green's Claims Under the ADEA

**1. Age Discrimination Claims.** – Green, who is over 40 years old, alleges that Costco "engaged in a single continuous course of conduct of discrimination against Plaintiff becuase of Plaintiff's age." Pl.'s Original Pet. ¶ 7.02. She claims that despite being qualified for her position, Costco "terminated [her] because of her age and . . . also perceived that Plaintiff's age adversely affected her performance." *Id*. ¶ 7.04. Finally, Green alleges that Costco replaced her with a much younger employee. *Id*. ¶ 7.05. To state a prima facie case of age discrimination, a plaintiff must show that she: "(1) suffered an adverse employment action; (2) was qualified for the position; (3) was within the protected class when the adverse action occurred; and, (4) was replaced by someone younger or treated less favorably than a similarly situated younger employee, or otherwise discharged because of her age." *Edwards*, 2015 WL 5227817, at *3 (citing *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003)). Summary judgment is appropriate because Green "fails to identify any younger employee who committed the same infraction and was not discharged." *Edwards*, 2015 WL 5227817, at *3. Further, Green has not shown that Costco's reason for firing her, or not promoting her, are mere pretext for discriminatory intent.

To establish disparate treatment based on age, Green must show that "the misconduct for which the plaintiff was discharged was nearly identical to that engaged in by other

employees." *Swenson v. Schwan's Consumer Brands North America, Inc.*, 500 Fed.Appx. 343, 346–47 (5th Cir. 2012) (quoting *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001)). It is not clear which younger employee Green intends to say replaced her or received more favorable treatment, but Green does not put forth evidence that *any* employee engaged in conduct similar to hers. As discussed in Section II.B.5, *infra*, though Green specifically notes that Perez received more favorable treatment despite his alleged violation of Costco policies, these alleged wrongdoings were not similar to Green's. Further, though Green claims that Costco promoted Masid, a twenty-eight year old, instead of her, Green cannot show that they were similarly situated. At the time of the promotion, Costco had determined that Green misused a member's private information.

Additionally, as discussed in Section II.B.4, *supra*, Costco provided a legitimate, non-discriminatory reason for firing Green. Because Green provides nothing more than her subjective belief that Costco fired her, or did not promote her, because of her age, Green has not met her burden to show that Costco's reasons for its employment decisions were merely pretext. Accordingly, summary judgment is proper on Green's age discrimination claims.

***2. Retaliation Claims.*** – As discussed in Section II.B.2, *supra*, Green failed to exhaust her administrative remedies on her retaliation claims under the ADEA as well as under Chapter 21.[5] In her Charge, Green complains of retaliation based on her filing of a discrimination lawsuit. In her Original Petition, however, Green alleges retaliation based on

---

[5]The Court notes it is unclear whether Green intends to bring retaliation claims under the ADEA, but addresses the issue out of an abundance of caution.

a text message to her supervisor stating that she should not be blamed for trying to end the affair between Perez and Gomez, or based on an internal complaint of discrimination based on her disability. Because Green's retaliation claims stated in her Original Petition do not grow out of the allegations in her Charge, Green did not exhaust her administrative remedies for her retaliation claims under the ADEA and the Court accordingly grants summary judgment on these claims.

   ***3. Hostile Work Environment Claims.*** – In her Original Petition, Green alleges that she "was subjected to a hostile work environment because of her age." Pl.'s Original Pet. ¶ 7.04. For the reasons discussed in Section II.B.3, *supra*, namely, that she did not mention a hostile work environment in her Charge, Green failed to exhaust her administrative remedies for her hostile work environment claims, and the Court accordingly grants summary judgment on those claims.

## CONCLUSION

   Based on the foregoing, the Court grants Costco's motion for summary judgment, grants Green's motion for leave to supplement, and denies Costco's motion to strike.

Signed May 30, 2017.

                 _____
                  David C. Godbey
                 United States District Judge